UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 09-80775-CIV-MARRA/JOHNSON

PAUL PRAGER,

     Plaintiff,

v.

FMS BONDS, INC., a Florida
corporation, JAY J. GOLDBERG,
JAMES A. KLOTZ, and PAUL FEINSILVER,

     Defendants.
_____/

## ORDER AND OPINION ON MOTION TO DISMISS AMENDED COMPLAINT

THIS CAUSE is before the Court on Defendants' Motion to Dismiss Amended Complaint [DE 35], filed February 22, 2010. Plaintiff filed a Response in Opposition [DE 40], and Defendants filed a Reply [DE 45]. The Motion is fully briefed and ripe for review. The Court has carefully considered the filings of the parties and is otherwise fully advised in the premises.

**I. Background**

The First Amended Complaint [DE 31] ("Am. Compl."), filed January 22, 2010, concerns Plaintiff Paul Prager's ("Prager") purchase of securities from Defendants, FMSbonds, Inc. ("FMS"), Jay J. Goldberg ("Goldberg"), James A. Klotz ("Klotz") and Paul Feinsilver ("Feinsilver"). According to the

1

allegations in the Complaint, Prager opened an investment account with Defendants in April 2008. Am. Comp. ¶ 10. Prager filled out a Customer Account Information Form (the "Account Form") provided by Defendants, stating that his investment objective was to produce tax-exempt income. Id. at ¶ 11. Prager requested conservative income producing products for his portfolio and made that requirement clear to FMS's registered representative, Goldberg. Id. at ¶ 12.

Goldberg, acting as a financial advisor, solicited Prager to purchase what Goldberg described as a safe municipal bond: a new issue known as Main Street Natural Gas, Inc. ("Main Street") Gas Project Revenue Bonds ("Main Street Bonds"). Id. at ¶ 13. Goldberg represented the investment as a State of Georgia general obligation bond. Id. at ¶ 14. Based upon Goldberg's representations to Prager, Prager purchased $200,000.00 in Main Street Bonds on April 24, 2008. Id. at ¶ 20. FMS identified the Main Street Bonds as "MAIN STR NAT GAS INC GA REV" on its Confirmation Remittance Form; this abbreviation omitted the word "Project" and shortened the second instance of "Gas" to "GA." Id. at ¶¶ 15-16.

Contrary to the representations of Goldberg and FMS, the Main Street Bonds were actually guaranteed by Lehman Brothers Holdings, Inc. ("Lehman Brothers"), not the State of Georgia. Id. at ¶ 17. Lehman Brothers was directly affiliated with Lehman Brothers Commodity Services, Inc.

2

("LCBS"), which was formed to act as a gas supplier to municipal

participants.[1] Id. Goldberg and FMS failed to disclose these facts to Prager in

either the initial representations or on the Confirmation Remittance Form. Id.

at ¶ 18. FMS also failed to provide Prager with a copy of the Official

Statement at the time of sale. Id. at ¶ 21.

Lehman Brothers filed for bankruptcy on September 15, 2008. Id. at ¶

24. Shortly thereafter, in September 2008, LCBS defaulted on its prepaid

gas obligations and the prepaid contracts were terminated. Id. at ¶ 25.

Lehman Brothers failed to honor its guaranty and the Bonds were valued at

a fraction of their par value. Id. Prager's portfolio suffered catastrophic

losses of over $150,000.00 of its value by the time he was told the truth

about the investment. Id. at ¶ 28. Prager attempted to mitigate his losses in

2009 and sold the bonds, suffering a net loss in principal of $112,000.00 as

well as losing accrued interest. Id. Prager filed suit, alleging violations of the

Securities Exchange Act of 1934 (Counts I and III) and Municipal Securities

Rulemaking Board ("MSRB") Rule G-32(a) (Count II), as well as common law

claims based on negligence (Count IV), breach of fiduciary duty (Count V),

fraud (Count VI), failure to supervise (Count VII), and vicarious liability

(Count VIII). Id. at 5-10.

---

[1] LCBS collected $700 million from the issuance of Main Street's tax-exempt bonds in order to fund a prepaid supply agreement with the Municipal Gas Authority of Georgia. Am. Compl. ¶ 19. This was LCBS's first and only prepaid gas transaction. Id. at ¶ 26.

Defendants move to dismiss Counts I, II, III, VII, and VIII of Prager's Amended Complaint for failure to state a claim. DE 35 at 1. Defendants contend that Prager has not pled sufficient facts in Count I to support a cause of action for securities fraud under SEC Rule 10b-5. Id. at 3-4. Defendants also argue that "control person" liability under §20(a) of the Exchange Act is invalid because of Prager's failure to state a primary violation under Rule 10b-5. Id. at 5-6. Finally, Defendants claim that there are no available causes of action for violations of MSRB regulations, failure to supervise, and vicarious liability. Id. at 6-7.

## II. Standard of Review

Ordinarily, the factual allegations in a complaint must only "be enough to raise a right to relief above the speculative level." Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007). Plaintiffs bringing Rule 10b-5 actions for securities fraud, however, must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4(b). In order to state a claim under Rule 9(b), a plaintiff must allege:

> 1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

4

Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008) (quoting

Tello v. Dean Witter Reynolds, Inc., 494 F.3d 956, 972 (11th Cir. 2007)).

A complaint for securities fraud must also comply with the PSLRA by

specifying "each statement alleged to have been misleading" and "the reason

or reasons why the statement is misleading." Mizarro, 544 F.3d at 1238.

Furthermore, the plaintiff must allege facts from which "a reasonable person

would deem the inference of scienter cogent and at least as compelling as

any opposing inference one could draw from the facts alleged." Tellabs, Inc.

v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007). Despite these

heightened pleading requirements, a court deciding a motion to dismiss a

§10(b) claim must still "accept all factual allegations in the complaint as

true." Id. at 322. Courts must also consider the complaint in its entirety,

including "documents incorporated in the complaint by reference." Id.

## III. Discussion

### A. Count I - Rule 10b-5

A valid action for securities fraud under Rule 10b-5 requires "(1) the

existence of a material misrepresentation or omission, (2) made with

scienter, (3) in connection with the purchase or sale of a security, (4) on

which the plaintiff relied, and (5) which was causally connected to (6) the

plaintiff's economic loss." Edward J. Goodman Life Income Trust v. Jabil

Circuit, Inc., 594 F.3d 783, 789 (11th Cir. 2010) (citing Dura Pharm., Inc. v.

Broudo, 544 U.S. 336, 341-42 (2005).

In this case, Prager alleges that the involvement of Lehman Brothers was not revealed in any of the solicitations from Defendants, that Goldberg told him the Main Street Bonds were guaranteed by the State of Georgia, and that the Confirmation Remittance Form was intentionally manipulated to give that impression. Am. Compl. ¶¶ 14, 16, 18. Defendants move to dismiss Prager's 10b-5 claim, arguing that it does not plead sufficient facts to satisfy the requirements of Rule 9(b) and the PSLRA. DE 35 at 1. Specifically, Defendants argue that Prager fails to provide facts detailing the time and place of the alleged material misrepresentations, the manner in which they misled him, Prager's reliance on the misrepresentations, and what was obtained by Defendants as a result of the fraud. Id. at 3-4. The Court holds that Prager has pled these facts with sufficient particularity, and addresses each of Defendants' arguments in turn.

## 1. Time and Place Requirements

Under Rule 9(b), a pleading averring fraud must allege the time and place of the fraudulent statements or omissions. Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008). Defendants contend that this requirement is not satisfied by Prager's 10b-5 claim because Prager never identifies the exact time and place where Goldberg allegedly misrepresented the nature of the Main Street Bonds.

"'Allegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity,'" but they are not the exclusive method of successfully pleading fraud; the Eleventh Circuit has held that "'alternative means are also available to satisfy the rule.'" Tello v. Dean Witter Reynolds, Inc., 494 F.3d 956, 972-73 (11th Cir. 2007) (quoting Durham v. Business Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988)). A complaint can allege the circumstances of a fraud in a manner that obviates the need for a precise date, hour, and physical location for each misleading statement or omission. Compare MeterLogic, Inc. v. Copier Solutions, Inc., 126 F. Supp. 2d 1346, 1361 (S.D. Fla. 2000) (complaint's allegations delineated a "sufficiently narrow time frame from which [defendants] could be on notice as to when these statements were made") and In re Theragenics Corp. Securities Litigation, 105 F. Supp. 2d 1342, 1349-50 (N.D. Ga. 2000) (pleading that identified allegedly misleading published statements by month and year satisfied requirements of Rule 9(b)) with Scaturro v. Seminole Cas. Ins. Co., 542 F. Supp. 2d 1290, 1298-1300 (S.D. Fla. 2008) (vague allegations of solicitations that occurred "regularly" between May 2002 and 2007 were insufficiently precise under Rule 9(b) and the PSLRA).

In this case, Prager alleges that he opened an investment account with FMS in April 2008, that Goldberg solicited him to purchase the Bonds by

representing them as a "State of Georgia general obligation bond," and, that on April 24, 2008, Prager purchased those Bonds. Am. Compl. ¶¶ 10, 14, 20. These paragraphs allege the identity of the person who made the fraudulent statement and what that statement contained. They also restrict the timeframe of the oral solicitations to the first few weeks of April 2008, before the bond sale was completed. In addition, Prager has attached documents that specify the transaction from which the purported fraud originated. Finally, another allegedly misleading statement, the abbreviation of "Main Street Natural Gas, Inc. Gas Project Revenue Bonds" to "MAIN STR NAT GAS INC GA REV," is clearly visible on the Confirmation Remittance Form, which reflects a trade date of "4/24/08." Am. Compl. Ex. 2.

These allegations, taken in the aggregate, are enough to put Defendants on notice as to which particular statements are being challenged as fraudulent, and the Court therefore finds that Prager's 10b-5 claim adequately pleads the time and place of the alleged fraud under Rule 9(b).

### 2. Prager's Reliance

According to Defendants, Prager's 10b-5 claim does not allege "'the manner in which [each alleged untrue statement actually] misled him.'" Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1371 (11th Cir. 1997)). Defendants also maintain that Prager has not pled sufficient facts to show reliance upon the alleged misrepresentations.

Prager's 10b-5 claim, however, directly presents both the manner that Goldberg's misrepresentations misled Prager and Prager's actual reliance on those statements. Prager has expressly alleged that Goldberg, acting as his "financial advisor" and representing himself as a "Fixed Income Specialist," represented that the bonds were "safe" investments that were guaranteed by the State of Georgia. Am. Compl. ¶¶ 4, 12, 14. Moreover, Prager asserts that "[b]ased upon the representations," Goldberg "induced" him to purchase the bonds. Id. at ¶ 20.

Defendants also argue that Prager has not pled facts showing that he exercised due diligence in investigating the true nature of the Main Street Bonds. See Thompson v. Smith Barney, Harris Upham & Co., Inc., 709 F.2d 1413, 1418 (11th Cir. 1983). In the Eleventh Circuit, an individual pursuing a 10b-5 claim must show "'reasonable reliance' upon the material misrepresentations, a test of subjective reliance tempered by the requirement of 'due diligence' on the part of the plaintiff." Gochnauer v. A.G. Edwards & Sons, Inc., 810 F.2d 1042, 1047 (11th Cir. 1987). Due diligence is not a freestanding element of a 10b-5 cause of action that must be pleaded in the affirmative, but only an important consideration in the foundational question of whether a 10b-5 plaintiff's reliance was reasonable under the circumstances. See Bruschi v. Brown, 876 F.2d 1526, 1529 (11th Cir. 1989). In Bruschi, for instance, the plaintiff investor's reliance was

9

reasonable in spite of her failure to read disclosure documents that contradicted the defendant broker's oral misrepresentations. Id. at 1529. The Court of Appeals instead outlined a number of factors to consider when determining the reasonableness of an investor's reliance:

> (1) the sophistication and expertise of the plaintiff in financial and security matters; (2) the existence of long standing business or personal relationships between the plaintiff and the defendant; (3) the plaintiff's access to relevant information; (4) the existence of a fiduciary relationship owed by the defendant to the plaintiff, (5) concealment of fraud by the defendant; (6) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations.

Id. In the instant case, Prager alleges he is a "75 year old retiree" who opened an investment account with FMS for the first time in April 2008. Am. Compl. ¶¶ 9-10. Prager did not come to FMS wishing to purchase the Main Street Bonds; FMS recommended the purchase. More importantly, the alleged misrepresentation was made by Goldberg, who was acting as Prager's broker, and Goldberg's alleged misrepresentations concerned a specific objective fact about the Main Street Bonds. Taking the allegations in Prager's Amended Complaint as true, the questions of whether Prager exercised due diligence and reasonably relied upon the alleged misrepresentations raise factual questions which cannot be resolved as a matter of law on a motion to dismiss.

## <u>3. What Defendants Obtained</u>

The final ingredient in stating a valid securities fraud claim consistent with Rule 9(b) is a description of what was "obtained as a consequence of the fraud." <u>Mizzaro v. Home Depot, Inc.</u>, 544 F.3d 1230, 1237 (11th Cir. 2008). Prager claims that "Defendants were motivated to induce Plaintiff to purchase the Bonds by their desire to serve their own financial interests." Am. Compl. ¶ 35.

This is the only express reference to what Defendants actually gained from misleading Prager. If viewed in isolation, this allegation lacks the specificity needed to satisfy Rule 9(b)'s particularity requirement, as the Rule 9(b) analysis focuses on what was actually obtained from the fraud, not on the purported reasons for the fraud. <u>See</u> <u>In re Eagle Building Technologies, Inc., Securities Litigation</u>, 319 F. Supp. 2d 1318, 1332 (S.D. Fla. 2004) ("asserting a motive is quite different from asserting what a defendant actually obtained").

"The application of Rule 9(b), however, 'must not abrogate the concept of notice pleading.'" <u>Ziemba v. Cascade Intern., Inc.</u>, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting <u>Durham v. Bus. Management Assocs.</u>, 847 F.2d 1505, 1511 (11th Cir. 1988)) From the other allegations in the Complaint, as well as the attached documents, Prager is alleging Defendants were acting as his brokers for the purchase of the Main Street Bonds, and it logically

11

follows that Defendants would be entitled to a commission (or some other form of compensation) in return for these services. In this case, what was "obtained as a consequence of the fraud" may be reasonably inferred from the specific circumstances alleged in the complaint: Defendants were paid in connection with brokering the sale of the Main Street Bonds. Prager has sufficiently alleged a claim under Rule 10b-5.

### B. Count II - MSRB Rule G-32(a)(i)

Prager next claims that Defendants engaged in a violation of Municipal Securities Rulemaking Board ("MSRB") Rule G-32 when they sold the Main Street Bonds without a prospectus. The MSRB is a regulatory board promulgated by the Exchange Act that creates rules relating to the purchase and sale of municipal securities. See 15 U.S.C. § 78o-4(b)(2). Violations of the MSRB rules are prohibited by law:

> No broker dealer, or municipal securities dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any municipal security in contravention of any rule of the Board.

15 U.S.C. § 78o-4(c)(1). Defendants argue, however, that there is no private right of action to enforce the MSRB rules.

"[W]hether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 15 (1979). A court

cannot recognize a private right of action absent evidence Congress intended to create one. <u>See</u> <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 575 (1979). In determining legislative intent to create a private cause of action, courts examine "the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies." <u>Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO</u>, 451 U.S. 77, 91 (1981).

In the instant case, nothing in the express language of 15 U.S.C. § 78o purports to create a private right of action. The other sections of 15 U.S.C. § 78o-4(c) describe the enforcement procedures to be followed by the Securities and Exchange Commission and other regulatory agencies, but make no mention of a private cause of action. Moreover, the statutory structure of Section 78o also hews against recognizing an implied private right of action to enforce the MSRB rules. Section 78o reflects a comprehensive scheme of municipal securities regulation, but again, there is no provision that explicitly supplements the well-established implied cause of action under §10(b) and Rule 10b-5.

Turning to the legislative history of the statute, there is no evidence of any intent to create a private right of action under 15 U.S.C. § 78o-4(c)(1). In enacting the Securities Acts Amendments of 1975, the Senate Committee

on Banking, Housing and Urban Affairs declared that dealers of municipal securities would be subjected to "essentially the same regulatory scheme that applies to other securities activities." S. Rep. No. 94-75, at 43 (1975), as reprinted in 1975 U.S.C.C.A.N. 179, 220-21. See also H.R. Conf. Rep. 94-229, 101 (1975) as reprinted in 1975 U.S.C.C.A.N. 321, 332 ("Senate bill extended the basic coverage of the Securities Exchange Act of 1934" to municipal securities). More specifically, the Senate Committee stated that "[i]nspection and enforcement [of the MSRB rules] would be the responsibility of the NASD, the banking agencies, and the SEC." S. Rep. No. 94-75, at 47. Thus, from the legislative history, it is clear that the MSRB rules were intended to be enforced by existing regulatory agencies, not by individuals. Congress' intent in creating the MSRB was to extend existing securities regulations to dealers of municipal securities, not to place those dealers into a new regime where private litigants could sue on the rules of the MSRB, a self-regulatory agency.

In spite of this lack of congressional intent, Prager argues that courts have recognized a private right of action under 15 U.S.C. § 78o-4(c)(1). See Grandon v. Merrill Lynch & Co., Inc., 147 F.3d 184, 193 (2d Cir. 1998) (using MSRB Rule G-30 factors in determining excessive broker-dealer mark-ups); Herman v. Salomon Smith Barney, Inc., 266 F. Supp. 2d 1208, 1211-12 (S.D. Cal. 2003) (plaintiff's state law claims were, in reality, federal

14

claims based on the MSRB Rules and were not eligible for remand to state court); In re Washington Public Power Supply System Securities Litigation, 623 F. Supp. 1466, 1478 (W.D. Wash. 1985) ("transactions in municipal securities are covered by the anti-fraud provisions of both the 1933 and 1934 Acts"). Two of these cases are inapposite; the plaintiffs in Grandon and In re Washington sued under the well-established implied right of action under §10(b) and Rule 10b-5. See 147 F.3d at 188-89; 623 F. Supp. at 1478. The court in Herman seems to imply that there is a cause of action under the MSRB rules, but only in the context of denying the plaintiff remand to state court, as "[t]he only legal hook which could potentially yield Plaintiff relief arises under the MSRB's well-defined waters" and the plaintiff's claims were thus exclusively federal in nature. 266 F. Supp. 2d at 1213. The Herman court also never directly examines whether there is an implied private right of action under the MSRB Rules. On the other hand, courts that have squarely analyzed 15 U.S.C. §78o-4(c)(1) have expressly held that there is no such right of action. See Charter House, Inc. v. First Tennessee Bank, N.A., 693 F. Supp. 593, 597 (M.D. Tenn. 1988) ("[S]ection 15B(c)(1) does not in terms create civil liabilities, but merely proscribes certain conduct for which specific judicial and administrative means of enforcement have been provided by Congress"); Redstone v. Goldman Sachs & Co., 583 F. Supp. 74, 77 (D. Mass. 1984) (no private right of action under MSRB

Rules G-17 and G-19).

Because the text, structure, and legislative history of 15 U.S.C. § 78o-4(c)(1) all indicate that Congress did not intend to create a new private right of action to enforce the MSRB Rules, the Court holds that there is no such separate cause of action.

### C. Count III - Control Person Liability Under §20(a)

Section 20(a) of the Exchange Act provides that "every person who, directly or indirectly, controls any person liable under any provision of this chapter or any rule or regulation thereunder shall be liable jointly and severally with and to the same extent as such controlled person." 15 U.S.C. § 78t(a). See Ledford v. Peeples, 605 F.3d 871, 893 (11th Cir. 2010). In addition to suing Goldberg and FMS directly under Rule 10b-5, Prager seeks to hold the other defendants, Feinsilver and Klotz, individually liable under §20(a) by virtue of their positions as directors "with the power to control the general affairs of FMS" as well as the power to control "the specific corporate policies" that allegedly damaged Prager. Am. Compl. ¶¶ 5-6.

Defendants' sole ground for dismissing Count II of the Amended Complaint is the argument that Prager did not allege a primary 10b-5 violation. As the Court held *supra*, however, Prager has successfully pleaded a primary violation of Rule 10b-5 with respect to Goldberg and FMS. Since the Defendants present no other arguments against Prager's §20(a) claim,

16

the Court holds that Prager has adequately pled control person liability on the part of both Klotz and Feinsilver.

### D. Count VII - Failure to Supervise

In Count VII, Prager alleges that FMS "owed [him] the duty of properly enforcing its rules and regulations and those of the various self regulatory agencies, of which FMS is a member." Am. Compl. ¶ 67. Prager also claims that FMS' negligent supervision of Goldberg was "willful, wanton and in reckless disregard of its duties." Id. at ¶ 69.

While FMS concedes it is a member of the National Association of Securities Dealers ("NASD"), FMS argues that Prager's negligent supervision claim should be dismissed because there is no private right of action to enforce the NASD rules. DE 45 at 5. Additionally, to the extent Prager's "negligent supervision" claim can be construed as a cause of action brought under Florida law, FMS argues that "failure to supervise" is not a cognizable state law claim, and that Count VII is a retread of two of Prager's other state law claims - breach of fiduciary duty and negligence. Id.

From the Amended Complaint, it is evident that Prager is not suing solely on the basis of the NASD rules, but also on the internal policies of FMS. Prager claims that FMS owed him a duty of care based on its own "rules and regulations," and that FMS' failure to effectively enforce its rules was a proximate cause of Plaintiffs' damages. Am. Compl. ¶ 67, 71. Under

Florida law, internal rules and procedures governing employees may be used as evidence to determine the correct standard of care in a negligence cause of action. See Mayo v. Publix Super Markets, Inc., 686 So. 2d 801, 802 (Fla. Dist. Ct. App. 4th Dist. 1997); Metropolitan Dade County v. Zapata, 601 So.2d 239, 244 (Fla. Dist. Ct. App. 3d Dist. 1992). Since Prager's negligent supervision claim thus does not depend on whether a private right of action exists to enforce the NASD rules regulating the supervision of registered representatives, the Court refrains from addressing that issue.

FMS also argues, however, that Prager's negligent supervision claim is duplicative of Prager's negligence claim against FMS in Count IV. This is correct, as negligent supervision is merely one theory of negligence that Prager may advance to show that FMS breached its duty to "effect any and all transactions in Plaintiff's account in a way which would inure to Plaintiff's benefit." Am. Compl. ¶ 50. Additionally, Defendants are not challenging Prager's general claim of negligence against FMS and Goldberg. The Court therefore finds that Prager's negligent supervision claim is redundant.

### **E. Count VIII - Vicarious Liability**

Prager also pleads vicarious liability as a separate cause of action against FMS in Count VIII. Am. Compl. ¶ 73. Defendants argue that Prager does not allege any underlying tort as a basis for vicarious liability, and that, in any case, this Count is redundant with Count VI of the Amended

Complaint, which asserts a cause of action for common law fraud and alleges that FMS is vicariously liable for any fraud perpetrated by Goldberg.

"[T]he doctrine of vicarious liability takes a party that is free of legal fault and visits upon that party the negligence of another." American Home Assur. Co. v. National Railroad Passenger Corp., 908 So. 2d 459, 468 (Fla. 2005). Under Florida law, vicarious liability must be pled specifically in a separate cause of action. See Goldschmidt v. Holman, 571 So. 2d 422, 423-24 (Fla. 1990) (plaintiffs barred from relief as complaint failed to allege "ultimate facts that establish either actual or apparent agency or any other basis for vicarious liability") (citing Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1128 (Fla. 1985)).

In this case, Prager's separate claim for vicarious liability sufficiently alleges that FMS is responsible for the acts of its employees through the doctrine of *respondeat superior*. Prager's claim does not specifically incorporate or re-allege any preceding tort claims committed by FMS's agents. This level of specificity is not necessary under Federal Rule of Civil Procedure 8(a). See Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests'") (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, the Amended Complaint only contains one negligence claim directed at an

19

individual employee of FMS; there is only one underlying tort that could subject FMS to vicarious liability, thus giving FMS adequate notice of Prager's vicarious liability claim and the grounds upon which it rests. Accordingly, the Court holds that Prager has sufficiently pleaded a vicarious liability claim against FMS under Florida law.

### F. Attorney's Fees

Attorney's fees may only be awarded by a court pursuant to an entitling statute or an agreement of the parties. See Hardt v. Reliance Standard Life Ins. Co., 130 S. Ct. 2149, 2157 (2010) ("[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise"); Dade County v. Pena, 664 So. 2d 959, 960 (Fla. 1995) (same).

In Prager's prayer for relief, he asks for "attorneys' fees if applicable under Federal or Florida law." Am. Compl. ¶ J. After reviewing the record, the Court is unaware of any statute or agreement entitling Prager to attorneys' fees in this case.

### IV. Conclusion

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Complaint (DE 35) is **GRANTED IN PART** AND **DENIED IN PART** as follows:

1) DENIED as to Count I.

2) GRANTED as to Count II.

3) DENIED as to Count III.

4) GRANTED as to Count VII.

5) DENIED as to Count VIII.

6) GRANTED as to Prager's request for attorneys' fees.

In view of the Court's rulings on Counts II and VII, no purpose would be served by granting Plaintiff leave to amend.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 26th day of July, 2010.

_____
KENNETH A. MARRA
United States District Judge

Copies furnished to:
all counsel of record